ORIGINAL

1  KEITH A. JACOBY, Bar No. 150233
2  SCOTT M. LIDMAN, Bar No. 199433
   HEATHER M. DAVIS, Bar No. 239372
3  LITTLER MENDELSON
   A Professional Corporation
   2049 Century Park East
4  5th Floor
   Los Angeles, CA  90067.3107
5  Telephone:  310.553.0308
   Facsimile:  310.553.5583
6  E-mail: kjacoby@littler.com; slidman@littler.com;
   hdavis@littler.com
7
   Attorneys for Defendants
8  COMERICA BANK, COMERICA
   INCORPORATED AND COMERICA
9  MANAGEMENT COMPANY (erroneously sued as
   COMERICA MANAGEMENT COMPANY, INC.)
10

11              UNITED STATES DISTRICT COURT

12      NORTHERN DISTRICT OF CALIFORNIA- SAN FRANCISCO DIVISION

13  CAROLINA RUMOHR, individually,          Case No.
    and on behalf of other members of the
14  general public similarly situated,

15                  Plaintiff,              **[PUTATIVE CLASS ACTION]**

16  v.                                      **DEFENDANTS' NOTICE TO
                                            FEDERAL COURT OF REMOVAL
17  COMERICA BANK, a Texas                  OF CIVIL ACTION FROM STATE
    corporation; COMERICA                   COURT PURSUANT TO 28 U.S.C.
18  INCORPORATED, a Delaware                §§ 1332, 1441, AND 1446**
    corporation; COMERICA
19  MANAGEMENT COMPANY, INC., a             [Jurisdiction Pursuant to Class Action
    Michigan Corporation; and DOES 1        Fairness Act and Diversity]
20  through 100, inclusive,

21                  Defendants.

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067-3107
310 553 0308

DEFENDANTS' NOTICE OF                                          Case No.
REMOVAL

1   **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**

2   **NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF, AND HER**

3   **ATTORNEYS OF RECORD**:

4       **PLEASE TAKE NOTICE** that Defendants COMERICA BANK ("CB"),

5   COMERICA INCORPORATED ("CI") and COMERICA MANAGEMENT

6   COMPANY (erroneously sued as COMERICA MANAGEMENT COMPANY, INC.,

7   ("CMC") (CB, CI and CMC are collectively referred to herein as "Defendants" or

8   "Comerica") hereby remove the above-captioned action from the Superior Court of

9   the State of California for the County of San Francisco to the United States District

10  Court for the Northern District of California pursuant to 28 U.S.C. sections 1332(a)

11  (diversity), 1332(d) (Class Action Fairness Act of 2005 or "CAFA"), 1441(b), and

12  1446(b) on the following grounds:

13  **STATEMENT OF JURISDICTION**

14      1.    This Court has original jurisdiction over this action under the

15  Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. section 1332(d).  In

16  relevant part, CAFA grants district courts original jurisdiction over class actions filed

17  under federal or state law in which any member of a class of plaintiffs is a citizen of a

18  state different from any defendant, and where the amount in controversy for the

19  putative class members in the aggregate exceeds the sum or value of $5,000,000,

20  exclusive of interest and costs.  As set forth below, this case meets all of CAFA's

21  requirements for removal, and is timely and properly removed by the filing of this

22  Notice.

23      2.    This Court also has original jurisdiction over this action under the

24  diversity of citizenship statute.  *See* 28 U.S.C. § 1332(a).  In relevant part, the

25  diversity statute grants district courts original jurisdiction over civil actions where the

26  matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

27  costs, and is between citizens of different states.  As set forth below, this case meets

28  all of the diversity statute's requirements for removal and is timely and properly

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL

Case No.

1  removed by the filing of this Notice. *See* 28 U.S.C. §§ 1332(a), 1441(a), and 1446.

2  **VENUE**

3      3.    The action was filed in San Francisco Superior Court. Therefore,

4  this action may be removed to the United States District Court for the Northern

5  District of California pursuant to 28 U.S.C. sections 84(d) and 1441(a).

6  **PLEADINGS, PROCESS AND ORDERS**

7      4.    On or about February 22, 2011, Plaintiff Carolina Rumohr

8  ("Plaintiff"), individually, and on behalf of other members of the general public

9  similarly situated, filed an unverified Class Action Complaint in the Superior Court of

10  the State of California for the County of San Francisco, entitled *Carolina Rumohr,*

11  *individually, and on behalf of other members of the general public similarly situated*

12  *v. COMERICA BANK, a Texas corporation; COMERICA INCORPORATED, a*

13  *Delaware corporation; COMERICA MANAGEMENT COMPANY, INC., a Michigan*

14  *corporation; and, Does 1 through 100, inclusive,* Case No. CGC-11-508433 (herein

15  referred to as the "Complaint"). Plaintiff alleges that she was employed by Comerica

16  as an Assistant Banking Center Manager in the State of California, and that the

17  proposed class consists of herself and all other current and former Assistant Banking

18  Center Managers of Comerica who worked within Comerica's San Francisco Bay

19  Area District at any time during the period November 3, 2005 to final judgment.

20  (Complaint, ¶¶ 21, 26).

21      5.    Plaintiff's Complaint asserts two purported causes of action: (1)

22  Violation of California Labor Code §1194 (Unpaid Minimum and Overtime Wages);

23  and (2) Violation of California Business and Professions Code §§ 17200, *et seq.* The

24  second cause of action for violation of California Business and Professions Code §§

25  17200, *et seq.* seeks restitution of wages for various alleged violations, including

26  failure to pay overtime, failure to provide meal and rest periods (and pay the one hour

27  premium owed resulting therefrom), failure to pay minimum wages, failure to timely

28  pay wages upon termination, failure to timely pay wages during employment, failure

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

DEFENDANTS' NOTICE OF REMOVAL       2.      Case No.

1    to provide compliant wage statements, failure to keep complete and accurate payroll

2    records and failure to reimburse necessary business-related expenses and costs.

3    (Complaint, ¶¶ 70-86).

4           6.      The Complaint, Summons, Notice to Plaintiff of Case

5    Management Conference, Civil Case Cover Sheet, Alternative Dispute Resolution

6    (ADR) Program Information Package, Statement Form and Information Sheet were

7    served upon Defendants on or about March 9, 2011. True and correct copies of the

8    Complaint, Summons, Notice to Plaintiff of Case Management Conference, Civil

9    Case Cover Sheet, Alternative Dispute Resolution (ADR) Program Information

10   Package, Statement Form and Information Sheet are attached hereto as **Exhibit A**.

11         7.      On April 4, 2011, Defendants filed an Answer to the Complaint.

12   A true and correct copy of Defendants' Answer to Plaintiff's Class Action Complaint

13   is attached hereto as **Exhibit B**.

14         8.      All of the Defendants join in this Notice of Removal.

15         9.      Since the Doe defendants have not yet been named or served, they

16   need not join or consent to Defendants' notice of removal. *Salveson v. Western States*

17   *Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984) (superseded by statute on other

18   grounds, as stated in *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389 (9th Cir.

19   1988) (named defendants not yet served in state court action need not join the notice

20   of removal). Furthermore, CAFA permits any defendant to unilaterally remove the

21   action if requirements of CAFA for removal are met, as they are here. *See* 28 U.S.C.

22   § 1453(b).

23        10.     To Defendants' knowledge, no further process, pleadings, or

24   orders related to this case have been filed in San Francisco Superior Court.

25              **PLEADINGS, PROCESS AND ORDERS IN RELATED CASES**

26       11.     The present action is related to several other pending cases, which

27   are relevant to the removal of this matter as set forth in greater detail below.

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL        3.             Case No.

1 **_Cordova_ Action**

2         12.    Pending before the Honorable Margaret M. Morrow in the United

3 States District Court for the Central District of California ("Central District") is a

4 lawsuit which Defendants removed to the Central District on December 3, 2009 from

5 Los Angeles Superior Court, and which is related to the above-captioned matter. The

6 matter is entitled _Yiadira Cordova; individually, and on behalf of members of the_

7 _general public similarly situated; vs. Comerica Bank, a Texas corporation, Comerica_

8 _Incorporated, a Delaware corporation, and Comerica Management Company, Inc., a_

9 _Michigan corporation_, Case No. 09-CV-08905-MMM (PLAx) ("_Cordova_ Lawsuit").

10         13.    In the _Cordova_ Lawsuit, Cordova, a former Assistant Banking

11 Center Manager employed by Comerica Management Company, primarily alleges that

12 she worked at a Comerica banking center in California and was misclassified as

13 exempt from overtime and was not provided with meal and rest breaks or accurate

14 wage statements. Her lawsuit was filed as a putative class action, and she purports to

15 represent former and current "Assistant Managers" employed by Defendants in the

16 state of California. Cordova also sought remedies under the California Labor Code

17 Private Attorney General Act ("PAGA") on behalf of all other "aggrieved" Assistant

18 Banking Center Managers. A true and correct copy of the First Amended Complaint

19 filed in the _Cordova_ Lawsuit is attached hereto as **Exhibit C.**

20         14.    On December 20, 2010, Cordova filed a motion for class

21 certification. (Declaration of Scott M. Lidman ("Lidman Decl."), ¶5.)). Defendants

22 filed their opposition on January 10, 2011. (Lidman Decl., ¶6). On January 25, 2011,

23 prior to the motion for class certification being heard, Cordova withdrew her motion

24 for class certification. (Lidman Decl., ¶7).

25         15.    On February 10, 2011, counsel for Cordova (also counsel for

26 Plaintiff in this action), Gene Williams, advised Defendants' counsel, Scott Lidman

27 the reason that the motion for class certification was withdrawn was that they did not

28 believe that they could obtain class certification in federal court and that they were

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL       4.       Case No.

1  considering breaking up the class of Assistant Banking Center Managers and filing
2  several actions in state court specifically in order to avoid federal court CAFA
3  jurisdiction. (Lidman Decl., ¶8).

4        16.    On February 15, 2011, Cordova's counsel further explained why
5  they had abandoned the class allegations by sending an e-mail stating that they
6  "believed that it would be a fool's errand to seek certification in **federal court in the**
7  **9th Circuit** where the *Cordova* case is pending." (Lidman Decl., ¶9, and Exhibit 1
8  thereto (emphasis in original exhibit)).

9        17.    Making good on their stated intent to break up the *Cordova* class
10  in a manner intended to avoid federal jurisdiction, Cordova's attorneys thereafter
11  arbitrarily gerrymandered the class of Assistant Banking Center Managers and filed
12  four separate state court actions (the *Gallegos, Rumohr, Granata* and *Mathews* actions
13  – described in detail below), which allege identical claims against the same
14  Defendants, and differ only with respect to the geographic location of the named
15  Plaintiffs and the classes they purport to represent. The *Gallegos, Rumohr, Granata*
16  and *Mathews* Complaints also allege nearly identical class allegations as those
17  encompassed in the original *Cordova* lawsuit. *See* **Exhibits A, C- F** attached hereto.

18  ***Gallegos* Action**

19        18.    Pending before the Honorable Margaret M. Morrow in the United
20  States District Court for the Central District of California ("Central District") is a
21  lawsuit which Defendants removed to the Central District on March 7, 2011 from Los
22  Angeles Superior Court, and which is related to the above-captioned matter. The
23  matter is entitled *Magali Gallegos, individually, and on behalf of members of the*
24  *general public similarly situated, vs. Comerica Bank, a Texas corporation, Comerica*
25  *Incorporated, a Delaware corporation, and Comerica Management Company, Inc., a*
26  *Michigan corporation, and Does 1 through 100, inclusive*, Case No. 11-CV-01938-
27  MMM (PLAx) ("*Gallegos* Lawsuit").

28        19.    Though the *Gallegos* matter was initially assigned to the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL
      5.      Case No.

1    Honorable Christina A. Snyder following removal from state court, the case was

2    transferred to Judge Morrow on the ground that it was related to the *Cordova* action

3    already pending before Judge Morrow. Specifically, the Court Order re Transfer

4    noted that the *Gallegos* matter arises from the same or closely related transactions,

5    happenings or events; calls for the determination of the same or substantially related

6    or similar questions of law and fact, and for other reasons would entail substantial

7    duplication of labor if heard by different judges. A true and correct copy of the Order

8    re Transfer of the *Gallegos* action to Judge Morrow is attached hereto as **Exhibit H**.

9          20.    In the *Gallegos* Lawsuit, Gallegos, a former Assistant Banking

10   Center Manager employed by Comerica Management Company, primarily alleges that

11   she worked as an Assistant Banking Center Manager within Comerica's Greater Los

12   Angeles District in California from September 2006 until approximately December

13   2010, and was misclassified as exempt from overtime. As a result, she claims she was

14   not provided with proper minimum and overtime wages, and was not provided with

15   meal and rest breaks or accurate wage statements. Her lawsuit was filed as a putative

16   class action, and she purports to represent all former and current Assistant Banking

17   Center Managers employed by Defendants in the state of California within its Greater

18   Los Angeles District at any time from November 3, 2005 through final judgment.

19         21.    The *Gallegos* Complaint, which was filed against the same three

20   Defendants as the matter herein, also alleges the same two causes of action asserted in

21   the present action: (1) Violation of California Labor Code §1194 (Unpaid Minimum

22   and Overtime Wages); and (2) Violation of California Business and Professions Code

23   §§ 17200, *et seq.* A true and correct copy of the Complaint filed in the *Gallegos*

24   lawsuit is attached hereto as **Exhibit D.**

25   ***Granata* Action**

26         22.    Pending before the Honorable Jeffrey B. Barton in the Superior

27   Court for the State of California for the County of San Diego ("San Diego Superior

28   Court") is a lawsuit which was filed on February 18, 2011, and which is related to the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                                          6.                                    Case No.

1  above-captioned matter. The matter is entitled *Juliette Granata, individually, and on*
2  *behalf of members of the general public similarly situated; vs. Comerica Bank, a*
3  *Texas corporation, Comerica Incorporated, a Delaware corporation, and Comerica*
4  *Management Company, Inc., a Michigan corporation,* Case No. 37-2011-00086316-
5  CU-OE-NC ("*Granata* Lawsuit").

6       23.    In the *Granata* Lawsuit, Granata, a former Assistant Banking
7  Center Manager employed by Comerica Management Company, primarily alleges that
8  she worked as an Assistant Banking Center Managers in California and was
9  misclassified as exempt from overtime. As a result, she claims she was not provided
10  with proper minimum and overtime wages and was not provided with meal and rest
11  breaks or accurate wage statements. Her lawsuit was filed as a putative class action,
12  and she purports to represent all former and current Assistant Banking Center
13  Managers employed by Defendants at a Comerica Banking Center within Defendants'
14  South Coast District at any time from November 3, 2005 through final judgment.

15       24.    The *Granata* Complaint, which was filed against the same three
16  Defendants as the matter herein, also alleges the same two causes of action asserted in
17  the present action: (1) Violation of California Labor Code §1194 (Unpaid Minimum
18  and Overtime Wages); and (2) Violation of California Business and Professions Code
19  §§ 17200, *et seq.* A true and correct copy of the Complaint filed in the *Granata*
20  lawsuit is attached hereto as **Exhibit E.**

21       25.    Defendants are simultaneously removing the *Granata* lawsuit to
22  the Southern District of California on the same grounds as set forth herein. Following
23  removal, Defendants plan to move to transfer and consolidate the present lawsuit with
24  the *Granata, Gallegos* and *Mathews* actions described herein.

25  ***Mathews* Action**

26       26.    Pending before the Honorable Kevin McKenney in the Superior
27  Court for the State of California for the County of Santa Clara ("Santa Clara Superior
28  Court") is a lawsuit which was filed on February 18, 2011, and which is related to the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308
DEFENDANTS' NOTICE OF REMOVAL       7.           Case No.

1   above-captioned matter.  The matter is entitled *Nancy Mathews, individually, and on*
2   *behalf of members of the general public similarly situated; vs. Comerica Bank, a*
3   *Texas corporation, Comerica Incorporated, a Delaware corporation; and Comerica*
4   *Management Company, Inc., a Michigan corporation; and Does 1 through 100,*
5   *inclusive*, Case No. 111CV194781 ("*Mathews* Lawsuit").

6          27.     In the *Mathews* Lawsuit, Mathews, a former Assistant Banking
7   Center Manager employed by Comerica Management Company, primarily alleges that
8   she worked as an Assistant Banking Center Manager in Defendants' Northern
9   California District and was misclassified as exempt from overtime.  As a result, she
10  claims she was not provided with proper minimum and overtime wages and was not
11  provided with meal and rest breaks or accurate wage statements.  Her lawsuit was
12  filed as a putative class action, and she purports to represent all former and current
13  Assistant Banking Center Managers employed by Defendants in Defendants' Northern
14  California District in the state of California at any time from November 3, 2005
15  through the entry of judgment.

16         28.     The *Mathews* Complaint, which was filed against the same three
17  Defendants as the matter herein, also alleges the same two causes of action asserted in
18  the present action: (1) Violation of California Labor Code §1194 (Unpaid Minimum
19  and Overtime Wages); and (2) Violation of California Business and Professions Code
20  §§ 17200, *et seq.*  A true and correct copy of the Complaint filed in the *Mathews*
21  lawsuit is attached hereto as **Exhibit F.**

22         29.     Defendants are simultaneously removing the *Mathews* lawsuit to
23  the Northern District of California on the same grounds as set forth herein.  Following
24  removal, Defendants plan to move to transfer and consolidate the present lawsuit with
25  the *Granata, Gallegos* and *Mathews* actions described herein.

26
27
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                                         8.                                      Case No.

**FOR PURPOSES OF REMOVAL UNDER CAFA, THE *RUMOHR*,**
**_GALLEGOS_, *GRANATA* AND *MATHEWS* ACTIONS MUST BE TREATED**
**AS A SINGLE CASE**

30.     For purposes of removal, the instant matter must be viewed as a single case together with the *Gallegos, Granata* and *Mathews* lawsuits.  Together, these four lawsuits represent one single action for purposes of removal, and for establishing jurisdiction under the Class Action Fairness Act.[1]  *See Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405 (6th Cir. 2008); *Proffitt v. Abbott Laboratories*, 2008 U.S. Dist. LEXIS 72891 (E.D. Tenn. Sept. 23, 2008).[2]

31.     In *Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405 (6th Cir. 2008), the Sixth Circuit found that five separate state court class actions, all involving the same parties and claims, must be viewed as a single case for purposes of establishing federal jurisdiction under CAFA.  In *Freeman*, the plaintiffs had divided what had once been a single action into five distinct state court cases, each covering a successive six-month time period.  *Id.* at 407.  In each of the five complaints, the plaintiffs capped damages at $74,000 for each individual plaintiff and $4.9 million overall.  *Id.*  The defendant removed all five of the cases, on the theory that each of them met the requirements for jurisdiction under CAFA because each case involved

---

[1] As noted above, Defendants plan to move to transfer and consolidate these four actions following removal of the *Rumohr, Granata* and *Mathews* actions to federal court.  The *Gallegos* action was removed to federal court on March 7, 2011.
[2] Defendants could not locate any Ninth Circuit authority addressing CAFA jurisdiction where a single class action that met the requirements for CAFA removal was splintered into several distinct state court actions.  In *Tanoh v. Dow Chemical Company*, 561 F.3d 945 (9th Cir. 2009), the Ninth Circuit determined that seven actions against the same defendant could not be aggregated to qualify as a "mass action" under CAFA.  However, *Tanoh* is distinguishable.  CAFA specifically excludes actions in which claims have been "joined upon motion of a defendant" from the definition or a "mass action."  *Tanoh*, 561 F. 3d at 951; 28 U.S.C. §1332(d)(11)(B)(i).  No such exclusion is contained in the section of CAFA addressing class actions, however.  The absence of such language is telling, and makes *Tanoh* readily distinguishable from the case at bar.  "Congress is presumed to act intentionally and purposely when it includes language in one section but omits it in another." *Estate of Bell v. Commissioner*, 928 F.2d 901, 904 (9th Cir. 1991).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL                    9.                    Case No.

1     more than $5 million in controversy. On appeal, the Sixth Circuit found that while the
2     plaintiffs were ordinarily free to cap their damages to avoid federal jurisdiction under
3     CAFA, under the circumstances, the damages alleged in each of the five cases had to
4     be aggregated. The result was that far more than $5 million was in controversy (the
5     other requirements for CAFA removal were also met). *Id.* at 407, 409. The Court
6     noted, in particular, that "[t]he complaints are identical in all respects except for the
7     artificially broken up time periods. Plaintiffs put forth no colorable reason for
8     breaking up the lawsuits in this fashion, other than to avoid federal jurisdiction. In
9     fact, plaintiffs' counsel admitted at oral argument that avoiding CAFA was the only
10    reason for this structuring ... CAFA was clearly designed to prevent plaintiffs from
11    artificially structuring their suits to avoid federal jurisdiction." *Id.* The Court further
12    found that CAFA should be interpreted "not to permit the splintering of lawsuits
13    solely to avoid federal jurisdiction ..." *Id.* at 408.

14            32.     In *Proffitt v. Abbott Laboratories*, 2008 U.S. Dist. LEXIS 72891
15    (E.D. Tenn. Sept. 23, 2008), plaintiff filed eleven state court class actions against the
16    same defendant. The only difference between the eleven complaints was the time
17    period covered – the complaints each covered a different year, spanning an entire
18    decade. *Id.* at *5-6. Each complaint also limited all damages to $4,999,000. *Id.* at *4.
19    Defendant removed all eleven cases pursuant to CAFA. The Court found that "the
20    time divisions are a deliberate attempt to circumvent the CAFA so that the plaintiff
21    can place a damage disclaimer of $4,999,000 in each complaint. The time divisions
22    are completely arbitrary and have no justifiable basis other than as a means to create
23    time frames small enough to allow the damages disclaimers as they are not warranted
24    by the facts of the alleged conspiracy." *Id.* at *6. The Court thus held that the eleven
25    cases could not be considered as isolated lawsuits for purposes of CAFA jurisdiction,
26    and that together, the amount in controversy was met. *Id.* at 12-13.

27            33.     Just as in the *Freeman* and *Proffitt* cases, Plaintiffs' counsel has
28    attempted to avoid CAFA jurisdiction by artificially splintering what was initially a

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL         10.                  Case No.

1    single lawsuit into four separate actions.[3]  While the plaintiffs in *Freeman* and *Proffitt*

2    matters severed their lawsuits into arbitrary time periods, here Plaintiffs have simply

3    gerrymandered their action by carving up the class by geographical region.  However,

4    this geographical division is just as arbitrary as the time divisions in *Freeman* and

5    *Proffitt*.  Indeed, in *Cordova*, the motion for class certification was briefed by the

6    parties, but the motion was withdrawn by Cordova's counsel before it could be heard.

7    In the Motion for Class Certification, Cordova's attorneys made no arguments with

8    respect to geographical distinctions amongst the class, further demonstrating that the

9    filing of four separate actions is a deliberate attempt to circumvent CAFA.

10           34.    Just as the counsel in *Freeman* admitted that the filing of five

11   separate state court complaints was a means to avoid CAFA jurisdiction, counsel for

12   Plaintiffs admitted that they were breaking up the class of Assistant Banking Center

13   Managers into several smaller class actions in state court specifically in order to avoid

14   federal court CAFA jurisdiction. (Lidman Decl., ¶8.).  They also noted in writing that

15   they had withdrawn the Cordova class claims because they "believed that it would be

16   a fool's errand to seek certification in **federal court in the 9th Circuit** where the

17   Cordova case is pending."  (Lidman Decl. at ¶9, and Exhibit 1 thereto (emphasis in

18   original exhibit)).  The filing of four separate state complaints, identical in all respects

19   except the geographic scope of the class each named plaintiff purports to represent,

20   was simply a tactic by counsel for the plaintiffs encompassed by the *Cordova* action to

21   avoid federal jurisdiction.  Indeed, Plaintiffs Rumohr, Gallegos, Granata and Mathews

22   measure their class period from November 3, 2005 to the present – four years prior to

23   the filing of the *Cordova* action, rather than their own complaints, further evidencing

24   the argument that this is one single action.  **Exhibits A, D, E & F** at ¶21, footnote 1

25

26   [3] The *Rumohr, Gallegos, Granata* and *Mathews* actions are all off-shoots from the
     original *Cordova* action.  The *Cordova* action is still pending, but now involves only
27   claims under PAGA.  Accordingly, while there are technically five lawsuits, *Cordova*
     is treated separately because it no longer contains class allegations for violations of
28   unpaid overtime and the like.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                                    11.                              Case No.

1    thereto.

2         35.    Because the filing of the *Rumohr*, *Gallegos*, *Granata* and

3    *Mathews* lawsuits was nothing more than an attempt to evade federal jurisdiction

4    under CAFA, the cases must be viewed as one sole action for purposes of determining

5    whether the jurisdictional requirements of CAFA are met.

6    ## THIS COURT HAS JURISDICTION OVER THIS CASE UNDER CAFA, 28

7    ## U.S.C. § 1332(d)

8         36.    Under CAFA, "[t]he district courts shall have original jurisdiction

9    of any civil action in which the matter in controversy exceeds the sum or value of

10   $5,000,000, exclusive of interest and costs, and is a class action in which . . . (A) any

11   member of a class of plaintiffs is a citizen of a State different from any defendant." 28

12   U.S.C. § 1332(d)(2).  CAFA authorizes removal of such actions in accordance with 28

13   U.S.C. §§ 1441 and 1446.

14        37.    This action[4] has been styled as a class action pursuant to

15   California Code of Civil Procedure § 382. (Complaints (**Exhibits A, D, E, F**), ¶ 20).

16        38.    As set forth below, this Court has jurisdiction over this case under

17   CAFA, 28 U.S.C. § 1332(d), and this case may be removed pursuant to the provisions

18   of 28 U.S.C. § 1441(a), in that it is a civil class action wherein:  (A) there is diversity

19   between at least one class member and Defendants; (B) the proposed class contains at

20   least 100 members; (C) Defendants are not states, state officials, or other

21   governmental entities; and (D) the total amount in controversy for all class members

22   exceeds $5,000,000.

23        **A.    Diversity of Citizenship.**

24        39.    CAFA's diversity requirement is satisfied when at least one

25   plaintiff is a citizen of a state in which the defendant is not a citizen.  See 28 U.S.C. §§

26

---

27   [4] As noted above, the term "this action" refers to not only the instant case, but also to
28   the *Gallegos, Granata* and *Mathews* actions collectively as one single matter for
     purposes of establishing jurisdiction under CAFA.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL          12.          Case No.

1  1332(d)(2)(A), 1453.

2       40. For diversity purposes, a person is a "citizen" of the state in which

3  he or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th

4  Cir. 1983); *see also LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2d Cir. 2001)

5  (citizenship determined at the time the lawsuit is filed); *see also Lundquist v.*

6  *Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir. 1991). A person's domicile is

7  the place he or she resides with the intention to remain, or to which he or she intends

8  to return. *See Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

9       41. At the time Plaintiff commenced this action and at the time of

10  removal, Plaintiffs Rumohr, Gallegos, Granata and Mathews were all citizens of the

11  state of California. (Complaints (**Exhibits A, D, E, F**), ¶ 6) (Plaintiff Rumohr alleges

12  that she is a resident of the County of San Francisco, in the State of California); *see*

13  *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (residency can create a rebuttable

14  presumption of domicile supporting diversity of citizenship); *see also State Farm Mut.*

15  *Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in

16  state court complaint of residency "created a presumption of continuing residence in

17  [state] and put the burden of coming forward with contrary evidence on the party

18  seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS

19  21162, *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of

20  domicile).

21       42. For purposes of § 1332, a corporation is deemed to be a citizen of

22  any State by which it has been incorporated and of the State where it has its principal

23  place of business. *See* 28 U.S.C. § 1332(c)(1). As recently clarified by the United

24  States Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. ___; 130 S. Ct. 1181; 175 L.

25  Ed. 2d 1029 (2010), "[t]he phrase "principal place of business" in 28 U. S. C. S. §

26  1332(c)(1) refers to the place where the corporation's high level officers direct,

27  control, and coordinate the corporation's activities. Courts have often metaphorically

28  called that place the corporation's "nerve center." The "nerve center" will typically be

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL     13.     Case No.

1   found at a corporation's headquarters."

2          43.    Defendants are not states, state officials, or other governmental

3   entities.  Comerica Incorporated is the parent company of Comerica Bank, a Texas

4   Banking Association.  Comerica Bank is a wholly-owned subsidiary of Comerica

5   Incorporated.   Comerica Management Company is a wholly-owned subsidiary of

6   Comerica Bank.  Comerica Incorporated is a publicly-traded company with shares

7   traded  on  the  New  York  Stock  Exchange.    (Declaration  of  Laura  Kurowski

8   ("Kurowski Decl."), ¶¶4, 5, 6 and 7).

9          44.    Defendant CI was at the time of the filing of this action, and

10  remains a citizen of the States of Delaware and Texas, in that it was and continues to

11  be  a  corporation  incorporated  under  the  laws  of  the  State  of  Delaware  with  its

12  principal place of business and corporate headquarters in Texas (where CI performs its

13  executive and administrative functions).  (Kurowski Decl., ¶5).

14         45.    Defendant CB was at the time of the filing of this action, and

15  remains a citizen of the State of Texas, in that it was and continues to be a corporation

16  incorporated under the laws of the State of Texas, with its principal place of business

17  and  corporate  headquarters  in  Texas  (where  CB  performs  its  executive  and

18  administrative functions).  (Kurowski Decl., ¶6).

19         46.    Defendant CMC was at the time of the filing of this action, and

20  remains  a  citizen  of  the  State  of  Michigan,  in  that  it  was  and  continues  to  be  a

21  corporation  incorporated  under  the  laws  of  the  State  of  Michigan,  with  its  principal

22  place of business and corporate headquarters in Michigan (where CMC performs its

23  executive and administrative functions).  (Kurowski Decl., ¶7).

24         47.    Defendants Does 1 through 100 are fictitious.   The Complaint

25  does not set forth the identity or status of any said fictitious defendants, nor does it set

26  forth any charging allegation against any fictitious defendants.  Pursuant to section

27  1441(a), the citizenship of defendants sued under fictitious names must be disregarded

28  for the purposes of determining diversity jurisdiction and cannot destroy the diversity

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                          14.                          Case No.

1    of citizenship between the parties in this action. *Newcombe v. Adolf Coors Co.,* 157
2    F.3d 686, 690-91 (9th Cir. 1998). In addition, because CAFA jurisdiction requires
3    only minimal diversity, so long as any Plaintiff is diverse from any Defendant, the
4    diversity requirements are met.

5            48.     As Plaintiffs Rumohr, Gallegos, Granata and Mathews are all
6    citizens of California and Defendants are all incorporated and have their principal
7    place of business outside California, the minimal diversity requirement of 28 U.S.C. §
8    1332(d)(2)(A) is satisfied.

9                    **B.     The Proposed Class Contains At Least 100 Members.**

10           49.     Plaintiffs Rumohr, Gallegos, Granata and Mathews seek to
11   represent a class of "[a]ll current and former California-based salaried "Assistant
12   Banking Center Managers," or persons who held similar job titles and/or performed
13   similar job duties, who worked at a Comerica Banking Center located within
14   [California] at any time during the period from November 3, 2005 to final judgment."[5]

15           50.     The total number of ABCMs who worked for Comerica
16   Management Company from November 3, 2005 through March 17, 2011 is
17   approximately 201 individuals. (Kurowski Decl., ¶9). Thus, the proposed class in
18   this lawsuit is in excess of the 100 person minimum required for CAFA jurisdiction.

19                   **C.     Defendants Are Not Governmental Entities.**

20           51.     Defendants are not states, state officials, or other governmental
21   entities. Comerica Incorporated is the parent company of Comerica Bank, a Texas
22   Banking Association. Comerica Bank is a wholly-owned subsidiary of Comerica
23   Incorporated.  Comerica Management Company is a wholly-owned subsidiary of
24   Comerica Bank.  Comerica Incorporated is a publicly-traded company with shares

25

26   [5] In each of their Complaints, Plaintiffs Rumohr, Gallegos, Granata and Mathews
     (herein "Plaintiffs") seek to represent different Assistant Banking Center Managers in
27   each of Defendants' four California regions. Together, therefore, these Plaintiffs thus
     seek to represent all Assistant Banking Center Managers in California from November
28   3, 2005 through final judgment.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                                    15.                              Case No.

1    traded on the New York Stock Exchange. (Kurowski Decl., ¶¶4 – 7).

2            **D.     Aggregate Class Amount In Controversy Exceeds $5,000,000.**

3            52.    Plaintiffs Rumohr, Gallegos, Granata and Mathews' Complaints

4    for damages each claim that the total amount in controversy (inclusive of attorneys'

5    fees) is less than $5,000,000.  (Complaints (**Exhibits A, D, E, F**) at ¶5).  Were

6    Plaintiff permitted to unilaterally and conclusively evade removal with a simple one-

7    line allegation that less than $5 million is at issue in the case, however, this would

8    undermine the entire purpose of CAFA.  However, as noted above, the amounts in

9    controversy in the *Rumohr, Gallegos, Granata* and *Mathews* actions must be

10   aggregated for purposes of determining CAFA jurisdiction.

11           53.    Under CAFA, where the complaint pleads an amount in

12   controversy less than the jurisdictional amount, Defendants will be able to remove the

13   case to federal court by showing to a legal certainty that the amount in controversy

14   exceeds the statutory minimum.  *See Lowdermilk v. United States Bank National*

15   *Assoc.*, 479 F.3d 994, 999 (9th Cir. 2007).  The Ninth Circuit has recognized that

16   "while the 'legal certainty' standard is difficult to define, at a minimum, Defendants

17   must produce enough evidence to allow a court to estimate with some certainty the

18   actual amount in controversy." *Johnson v. U.S. Vision, Inc.,* 2011 U.S. App. LEXIS

19   3698, at *2 (9th Cir. Feb. 24, 2011) (reaffirming that the burden "is not

20   insurmountable"); *see also Nelson v. Bic USA, Inc.,* 2008 U.S. Dist. LEXIS 27366

21   (S.D. Cal. Apr. 1, 2008) (denying motion to remand and finding that removing party

22   established the amount in controversy exceed $5 million under "legal certainty"

23   standard).

24           54.    Defendants can establish the amount in controversy by the

25   allegations in the Complaint, or by setting forth facts in the Notice of Removal that

26   demonstrate that the amount in controversy exceeds the jurisdictional minimum with

27   "legal certainty".  *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir.

28   1996); *Rippee v. Boston Mkt. Corp.,* 408 F. Supp. 2d 982, 984 (S.D. Cal. 2005)

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL                    16.                    Case No.

("According to the Report of the Senate Committee on the Judiciary on CAFA, the requirement under CAFA that the amount in controversy exceed $5,000,000 in the aggregate may be established 'either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief).'"). The District Court may consider whether it is facially apparent from the Complaint that the jurisdictional amount is in controversy. *Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *Conrad Assoc. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998). In addition to the contents of the removal petition, the Court considers "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," such as affidavits or declarations. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *Singer*, 116 F.3d at 377. Defendants are not obliged to "research, state, and prove the plaintiff's claim for damages." *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994).

55. In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe. *Rippee*, 408 F. Supp. 2d at 986; *see also Scherer v. Equitable Life Assurance Society of the U.S.*, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is considered when determining the amount in controversy; rather, it is the amount put in controversy by the plaintiff's complaint).

56. Defendants deny the validity and merit of all of Plaintiffs' claims, the legal theories upon which they are purportedly based, and the claims for monetary and other relief that flow from them. However, for purposes of removal only, and without conceding that Plaintiffs or the putative class are entitled to any damages or

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL     17.     Case No.

penalties, it is readily apparent that the aggregated claims of the putative class as defined in the *Rumohr, Gallegos, Granata* and *Mathews* matters establish an amount "in controversy" well in excess of the jurisdictional minimum of $5,000,000.

57.   As noted above, pending before the Honorable Margaret M. Morrow, in the United States District Court for the Central District of California ("Central District"), is a lawsuit related to the instant litigation which Defendants removed to the Central District on December 3, 2009, from Los Angeles County Superior Court, and is related to the above-captioned matter.  The matter is entitled *Yiadira Cordova; individually, and on behalf of members of the general public similarly situated; vs. Comerica Bank, a Texas corporation, Comerica Incorporated, a Delaware corporation, and Comerica Management Company, Inc., a Michigan corporation*, Case No. 09-CV-08905-MMM ("Cordova Lawsuit").

58.   In the *Cordova* lawsuit, Cordova, a former Assistant Banking Center Manager employed by Comerica Management Company primarily alleges that she worked at a Comerica banking center in California and was misclassified as exempt overtime exempt, and was not provided with meal and rest breaks or accurate wage statements.  Her lawsuit was filed as a putative class action and she purports to represent former and current "Assistant Managers" employed by Defendants in the state of California.  Cordova also sought remedies under the California Labor Code Private Attorney General Act ("PAGA") on behalf of all other "aggrieved" Assistant Banking Center Managers.  On December 20, 2010, Cordova filed a motion for class certification.  In connection with the motion for class certification, Cordova submitted sworn declarations from several putative class members.  A true and correct copy of the sworn declarations submitted to the United States District Court, Central District of California on December 20, 2010 are attached hereto as **Exhibit G**.

59.   On behalf of themselves and the putative class members, Plaintiffs in the *Gallegos, Rumohr, Mathews* and *Granata* matters seek: (1) Violation of California Labor Code §1194 (Unpaid Minimum and Overtime Wages) (Complaint,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

DEFENDANTS' NOTICE OF REMOVAL                    18.                    Case No.

1    ¶¶ 55-69); and (2) Violation of California Business and Professions Code §§ 17200, *et*
2    *seq.* The second cause of action for violation of California Business and Professions
3    Code §§ 17200, *et seq.* seeks restitution of wages for various alleged violations,
4    including failure to pay overtime, failure to provide meal and rest periods (and pay the
5    one hour premium owed resulting therefrom), failure to pay minimum wages, failure
6    to timely pay wages upon termination, failure to timely pay wages during
7    employment, failure to provide compliant wage statements, failure to keep complete
8    and accurate payroll records and failure to reimburse necessary business-related
9    expenses and costs. (Complaints (**Exhibits A, D, E, F**), ¶¶ 70-86).

10          60.    Plaintiffs' second cause of action for violations of California
11   Business & Professions Code §17200 seeks restitution of wages held for unpaid
12   overtime wages; unpaid wages for missed meal periods and rest breaks, going back to
13   November 3, 2005. Plaintiffs' first cause of action further seeks statutory penalties
14   pursuant to Labor Code §1197.1 and §2698 et seq. (Complaints (**Exhibits A, D, E,**
15   **F**), ¶¶55-85 and Prayers for Relief).

16          61.    Claims of unlawful business practices under California Business
17   and Professions Code §§ 17200, *et seq.*, are subject to a four-year statute of
18   limitations. *See* Cal. Bus. & Prof. Code § 17208. Accordingly, the three-year statute
19   of limitations period for the underlying statutory Labor Code claims for Plaintiffs'
20   first, second and third causes of action pursuant to Cal. Labor Code §§ 510 and 226.7
21   are extended by one additional year. *See Cortez v. Purolator Air Filtration Products*
22   *Co.*, 23 Cal. 4th 163 (2000)(repayment of back wages recoverable under California's
23   unfair competition law and is subject to a four year statute of limitations).

24          62.    Despite the fact that the *Rumohr, Gallegos, Granata* and *Mathews*
25   were all filed in February 2011, these four Plaintiffs allege that the class period is
26   measured from November 3, 2005 because Defendants have been on notice of the
27   allegations since November 3, 2009 (with the filing of the *Cordova* action).
28   (Complaints, (**Exhibits A, D, E, F**) at footnote 1). Though Defendants dispute these

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

DEFENDANTS' NOTICE OF
REMOVAL                                    19.                                    Case No.

1   Plaintiffs' measurement of the statute of limitations, for purposes of removal,
2   Defendants use this longer limitations period for purposes of measuring the amount in
3   controversy. Accordingly, the class that the four Plaintiffs seek to represent, as set
4   forth in the class definition, begins on November 3, 2005.

5   **Unpaid Overtime Compensation Potentially Recoverable As Restitution Under**
6   **California Business & Profession Code § 17200**

7       63.    Plaintiffs seek through their second cause of action for violations
8   of Business & Professions Code § 17200 restitution for allegedly unpaid overtime.
9   (Complaints (**Exhibits A, D, E, F**), ¶ 46.). Plaintiffs' unpaid overtime claim on behalf
10   of the putative class is based upon the assertion that putative class members worked in
11   excess of (8) hours in a day and/or in excess of forty (40) hours in a week
12   "throughout" the class period. While Plaintiffs do not define "throughout," Webster's
13   New World Dictionary, Third College Edition (1988), defines "throughout" to mean
14   with "during the whole time or action; from beginning to end".

15       64.    The 201 potential class members worked as ABCMs for a
16   conservative total of 20,364 workweeks during the putative class period. (Kurowski
17   Decl., ¶¶9, 10). For these 201 ABCMs, there were a total of 15,968 workweeks
18   during which putative class members worked four or more days. (Kurowski Decl.,
19   ¶¶10, 11). Defendants have excluded those workweeks from this analysis where
20   putative class members worked three or fewer days. (Kurowski Decl. ¶11).

21       65.    Plaintiff Cordova asserted causes of action for: (1) violation of
22   Labor Code §§ 510 and 1998 (unpaid overtime); (2) violation of Labor Code §§ 226.7
23   and 512(a)(unpaid meal period premiums); (3) violation of Labor Code § 226.7
24   (unpaid rest period premiums); (4) violation of Labor Code §§ 201 and 202 (wages
25   not timely paid upon termination); (5) violation of Labor Code § 226(a) (non-
26   compliant wage statements); (6) violation of California Business and Professions
27   Code §§ 17200 et seq.

28       66.    The class members who submitted declarations in the *Cordova*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL
20.
Case No.

1  lawsuit attested to working between 7 to 40 hours of overtime per week on average.
2  **Exhibit G**. Furthermore, these class members attested that "based on my own
3  observations of other employees, as well as my conversations with them, I believe that
4  the experience of other Comerica Bank Assistant Banking Center Managers is similar
5  to mine" or "I believe my experience is similar in nature to that of other current and
6  former 'Assistant Managers' in the...conditions and hours worked." **Exhibit G** (*See*
7  Declaration of Daniel Robles, ¶ 10; Declaration of William Sweet, ¶ 10; Declaration
8  of Aline Khelghatian, ¶ 11).

9      67. Based on the allegations in the Complaints and, notwithstanding
10  sworn declarations submitted by more than a dozen of the ABCM putative class
11  members who attest to working, on average, a minimum of 7 hours of overtime per
12  week, conservatively applying only five hours of overtime worked by the 201 ABCM
13  putative class members per workweek for purposes of determining the amount in
14  controversy, the unpaid overtime hours amounts to 79,840 unpaid overtime hours
15  (15,968 workweeks x 5 hours of overtime).

16      68. To determine the monetary amount at issue, the total number of
17  hours is multiplied by one and one-half times (1.5) the employees' hourly rate for
18  each hour of unpaid overtime.

19      69. The four Plaintiffs and the members of the ABCM class they seek
20  to represent were paid on a salary basis. (Kurowski Decl. ¶12). As of February 1,
21  2011, the average salary of an ABCM was an equivalent of $26.04 per hour.
22  (Kurowski Decl. ¶12). The average hourly rate for ABCMs over the entire statutory
23  period is $24.83. (Kurowski Decl., ¶13).

24      70. Using the average hourly rate for ABCMs of $24.83 (which is
25  much lower than the current average hourly rate for a putative class member), the
26  overtime rate, or one and one-half times the hourly rate of $24.83 is $37.245 ($24.83 x
27  1.5 = $37.245). Applying this hourly overtime rate of $37.245 to the approximately
28  79,840 overtime hours owed during the putative class period, the amount in

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL      21.      Case No.

1   controversy for the ABCMs' overtime claim amount to $2,973,640.80 ($37.245
2   overtime rate x 79,840 overtime hours = $2,973,640.80), all of which is separate and
3   apart from any applicable penalties, interest, and attorneys' fees. This figure does not
4   take into account any overtime claimed for weeks where putative class members
5   worked three or fewer days, nor does it account for any double time hours alleged to
6   have been worked, making it an overly conservative estimate.

| Class | Alleged OT Hours | Overtime Rate | Potential Unpaid Overtime Recoverable as Restitution Under B&P Code §17200 |
|-------|------------------|---------------|------------------|
| ABCMs | 79,840 | $37.245 | $2,973,640.80 |

**Compensation for Missed Meal Periods Potentially Recoverable As Restitution Under California Business & Professions Code § 17200**

14       71.    Plaintiffs allege that that Defendants "regularly and consistently"
15   failed to provide them with uninterrupted meal breaks. (Complaints (**Exhibits A, D,**
16   **E, F**), ¶47.) Thus, Plaintiffs seek restitution for allegedly unpaid wages for missed
17   meal breaks in the amount of one (1) hour of pay at their regular rate of compensation
18   for each workday that a meal period was not provided. (Complaints (**Exhibits A, D,**
19   **E, F**), ¶¶ 21, 70-86, and Prayer for Relief; *see also* Cal. Lab. Code § 226.7(b)).

20       72.    Plaintiffs do not state the frequency with which the alleged denial
21   of any uninterrupted, legally-mandated meal period occurred, other than to note that
22   meal breaks were "regularly" denied. While Plaintiffs do not define "regularly,"
23   *Webster's New World Dictionary*, Third College Edition (1988) defines "regularly" to
24   mean "usual; customary .... habitual in action ... characterized by conformity to a fixed
25   principle or procedure." In addition, based on the declarations submitted in support of
26   Plaintiff Cordova's motion for class certification, on average, ABCMs were allegedly
27   "rarely" able to, "never" or "frequently unable" to take their 30 minute meal breaks.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL                22.                    Case No.

**Exhibit G**. Furthermore, some of the putative class members attested in their declarations submitted in the *Cordova* lawsuit that "based on my own observations of other employees, as well as my conversations with them, I believe that the experience of other Comerica Bank Assistant Banking Center Managers is similar to mine" or "I believe my experience is similar in nature to that of other current and former 'Assistant Managers' in the...conditions and hours worked." **Exhibit G** (*See* Declaration of Daniel Robles, ¶ 10; Declaration of William Sweet, ¶ 10; Declaration of Aline Khelghatian, ¶ 11).

73.     Defendants deny the validity and merit of Plaintiffs' meal period claims. However, Defendants assume for purposes of CAFA removal only, that such alleged violations occurred only two times per workweek during the putative class period for the ABCMs (i.e. during the 15,968 workweeks). Acting under this assumption, the total number of missed meal periods at issue is 31,936 for ABCMs (15,968 workweeks x 2 missed meal periods = 31,936). Applying the hourly rate of $24.83 to the 31,936 missed meal breaks, a conservative estimate of the aggregate amount in controversy for the missed meal break claims is $792,970.88 ($24.83 hourly rate x 31,936 missed meal breaks = $792,970.88).

74.     Should Plaintiffs allege that they, along with the potential putative class members, missed more than two meal periods per week during the putative class period, than the amount in controversy is clearly higher.

| Class | Alleged Missed Meal Breaks (assuming only two per defined workweek) | Hourly Rate | Potential Wages for Missed Meal Breaks Recoverable as Restitution Under B&P Code §17200 |
|---|---|---|---|
| ABCMs | 31,936 | $24.83 | $792,970.88 |

**Compensation for Missed Rest Breaks Potentially Recoverable As Restitution**

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL

23.

Case No.

<u>**Under California Business & Professions Code § 17200**</u>

75.     Plaintiffs seek through their second cause of action for violations of Business & Professions Code § 17200 restitution for allegedly unpaid wages for missed rest breaks. (Complaints (**Exhibits A, D, E, F**), ¶76). Thus, Plaintiffs seek restitution for allegedly unpaid wages for missed rest breaks in the amount of one (1) hour of pay at their regular rate of compensation for each workday that a meal period was not provided. (Complaints (**Exhibits A, D, E, F**), ¶¶ 21, 70-86, and Prayer for Relief; *see also* Cal. Lab. Code § 226.7(b)).

76.     This claim is based on Plaintiffs' allegations that the Defendants "regularly and consistently" failed to provide them with uninterrupted rest breaks. (Complaints (**Exhibits A, D, E, F**), ¶47). While Plaintiffs do not define "regularly," *Webster's New World Dictionary*, Third College Edition (1988) defines "regularly" to mean "usual; customary .... habitual in action ... characterized by conformity to a fixed principle or procedure." In addition, based on the declarations submitted in support of Plaintiff Cordova's motion for class certification, some ABCMs attested that they were allegedly "never able to" take their rest breaks and that based on their observations of other employees, they believe that the experience of other Comerica Banking Center Managers were similar to their respective experiences. **Exhibit G**.

77.     Defendants deny the validity and merit of these claims. However, for purposes of removal only, Defendants calculate the amount in controversy for the missed rest break claims based upon the same calculation used to determine the amount in controversy concerning Plaintiffs' missed meal period claims. Defendants assume for purposes of CAFA removal only, that such alleged violations occurred only two times per workweek during the putative class period for the ABCMs (i.e. during the 15,968 workweeks). Acting under this assumption, the total number of missed rest breaks at issue is 31,936 for ABCMs (15,968 workweeks x 2 missed rest periods = 31,936). Applying the hourly rate of $24.83 to the 31,936 missed rest breaks, a conservative estimate of the aggregate amount in controversy for the missed

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL                    24.                    Case No.

1  rest break claims is $ $792,970.88 ($24.83 hourly rate x 31,936 missed rest breaks =
2  $792,970.88).

3      78.    Should Plaintiffs allege that they, along with the potential putative
4  class members, missed more than two rest breaks per week during the putative class
5  period, or missed rest breaks during weeks when they worked three or fewer days,
6  then the amount in controversy is clearly higher,.

| Class | Alleged Missed Rest Breaks | Hourly Rate | Potential Wages for Missed Rest Breaks Recoverable as Restitution Under B&P Code §17200 |
|---|---|---|---|
| ABCMs | 31,936 | $24.83 | $792,970.88 |

### Penalties Pursuant to Labor Code § 1197.1

79.    In connection with their first cause of action for unpaid wages,
Plaintiffs seek to recover penalties pursuant to Labor Code §1197.1, which provides
that Plaintiffs (and members of the putative class) are entitled to recover a penalty of
one hundred dollars ($100) for the initial failure to timely pay her wages and two
hundred and fifty dollars ($25) for each subsequent failure to pay each employee
minimum wages. (Complaints (**Exhibits A, D, E, F**), ¶68).

80.    Though Defendants deny the merit of Plaintiffs' Labor Code
§1197.1 penalty claim, for purposes of removal only, Defendants determine the
amount in controversy by applying the maximum penalty authorized.

81.    A claim for penalties is subject to a one year statute of limitations
pursuant to California Code of Civil Procedure §340(a). Since Plaintiff filed this
action on February 22, 2011, the claim for Labor Code §1197.1 penalties goes back to
February 22, 2010.[6]

---

[6] The *Rumohr* matter was filed on February 22, 2011, a few days after the *Gallegos, Granata* and *Mathews* actions, which were filed on February 18, 2011. However, the analysis is substantially the same, and Defendants herein use February 22, 2011 as the

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553.0308

DEFENDANTS' NOTICE OF REMOVAL    25.    Case No.

82.     From February 22, 2010 to March 25, 2011 (the date the data was compiled for purposes of this removal), at least 126 ABCMs have been employed in California. (Kurowski Decl., ¶18).  Within that same time period, there were at least 3,314 pay periods in which ABCMs worked at least four days in a week.  (Kurowski Decl., ¶17).  Based on the assumption that ABCMs allege that they worked overtime compensation in each pay period where they worked at least four days in a week, it can be presumed that the putative class members are potentially entitled to Labor Code § 1197.1 penalties for each of the 3,314 pay periods that fall within the statute of limitations period to date for penalties.

83.     Applying a penalty of $100 for the first pay period for each of the 126 ABCMs, and $250 for the subsequent 3188 pay periods within the statute of limitations, the potential Labor Code §1197.1 penalties to date are approximately $809,600.00 (($100 x 126) + ($250 x 3188) = $809,600.00).

84.     In total, the amount in controversy for Plaintiffs' claim for Labor Code § 1197.1 penalties is $809,600.00.  Of course, this is a conservative estimate as it only takes into account the pay periods as of the date of the filing of this removal, not through final judgment as Plaintiffs seek.

### Penalties Pursuant to Labor Code § 2698, *et seq.*

85.     In connection with their first cause of action for unpaid wages, Plaintiffs seek to recover penalties pursuant to Labor Code § 2699(a), (f) and (g) for violations of, among other Labor Code sections, Labor Code § 510.  (Complaints (**Exhibits A, C, D, E**), ¶9, Prayer for Relief).  Violations of Labor Code § 510 result in penalties pursuant to Labor Code § 558(a), which provides that Plaintiff is entitled to recover a penalty of fifty dollars ($50) for the initial pay period where overtime was not paid, and one hundred dollars ($100) for each subsequent pay period where overtime was not paid.

measuring date.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL

26.

Case No.

1          86. Though Defendants deny the merit of Plaintiffs' Labor Code §

2  2699 penalty claim, for purposes of removal only, Defendants determine the amount

3  in controversy by applying the maximum penalty authorized.

4          87. A claim for penalties is subject to a one year statute of limitations

5  pursuant to California Code of Civil Procedure §340(a). Since Plaintiffs filed this

6  action on February 22, 2011, the claim for Labor Code § 2699 penalties goes back to

7  February 22, 2010.[7]

8          88. From February 22, 2010 to March 25, 2011 (the date the data was

9  compiled for purposes of this removal), 126 ABCMs have been employed in

10 California. (Kurowski Decl., ¶18). Within that same time period, there were 3,314

11 pay periods in which ABCMs worked at least four days in a week. (Kurowski Decl.,

12 ¶17). Based on the assumption that ABCMs allege that they worked overtime

13 compensation in each pay period where they worked at least four days in a week, it

14 can be presumed that the putative class members are potentially entitled to Labor

15 Code § 2699 penalties for each of the 3,314 relevant pay periods that fall within the

16 statute of limitations period to date.

17         89. Applying a penalty of $50 for the first pay period for each of the

18 126 ABCMs, and $100 for the subsequent 3,188 pay periods within the statute of

19 limitations, the potential Labor Code § 2699 penalties to date are approximately

20 $325,100.00 (($50 x 126) + ($100 x 3188) = $325,100.00).

21         90. In total, the amount in controversy for Plaintiffs' claim for Labor

22 Code § 2699 penalties is $325,100.00. Of course, this is a conservative estimate as it

23 only takes into account the pay periods as of the date of the filing of this removal, not

24 through final judgment as Plaintiffs seek.

25                                     **Attorneys' Fees**

26 [7] The *Rumohr* matter was filed on February 22, 2011, a few days after the *Gallegos,*

27 *Granata* and *Mathews* actions, which were filed on February 18, 2011. However, the

28 analysis is substantially the same, and Defendants herein use February 22, 2011 as the measuring date.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL       27.       Case No.

1    91.    Plaintiffs also seek to recover attorneys' fees pursuant to
2   California Labor Code § 1194(a), among other statutory provisions. (Complaints
3   (**Exhibits A, D, E, F**), ¶10, Prayer for Relief). It is well settled that, in determining
4   whether a complaint meets the amount in controversy requirement, the Court should
5   consider the aggregate value of claims for damages *as well as* attorneys' fees. *See,*
6   *e.g.*, *Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007);
7   *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *cert. denied*, 127 S. Ct.
8   157 (2006); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-1156 (9th Cir.
9   1998)(attorneys' fees may be taken into account to determine jurisdictional amounts).
10   Assuming an extremely conservative attorney's fee award of only 10% of the
11   aforementioned amounts in controversy, the amount of attorneys' fees recovered by
12   Plaintiff should she prevail will likely exceed $569,428.25 ($5,694,282.56 x 10% = $
13   $569,428.25). *See Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008),
14   *quoting*, *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex.
15   2000) ("Empirical studies show that, regardless whether the percentage method or the
16   lodestar method is used, fee awards in class actions average around one-third of the
17   recovery.").

18    92.    This estimated fee award is very conservative, given the high
19   hourly rates charged by Plaintiffs' attorneys. Plaintiffs' attorney Matthew Righetti has
20   previously declared under penalty of perjury that his hourly fee is $750.00. *See*,
21   Defendants' Request for Judicial Notice at ¶1, filed herewith, and Exhibit A thereto.
22   One of Plaintiff's other attorneys, Gene Williams, has an hourly rate of at least
23   $495.00. *See*, Defendants' Request for Judicial Notice at ¶2, filed herewith, and
24   Exhibit B thereto.

### Total Amount in Controversy

26    93.    Based on the foregoing, the total potential recovery for Plaintiffs
27   on their claims for restitution pursuant to California Business and Professions Code
28   §17200 for unpaid overtime wages and unpaid compensation for missed meal and rest

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL                    28.                    Case No.

breaks, and their claims for penalties pursuant to their first cause of action, plus their claim for attorneys' fees, is no less than **$6,263,710.81**, as summarized below:

| Plaintiffs' Claim | Amount In Controversy |
|---|---|
| Restitution for Unpaid Overtime Wages | $2,973,640.80 |
| Restitution for Unpaid Compensation for Missed Rest Breaks | $792,970.88 |
| Restitution for Unpaid Compensation for Missed Meal Breaks[8] | $792,970.88 |
| Labor Code §1197.1 Penalties | $809,600.00 |
| Labor Code §2699 Penalties | $325,100.00 |
| Attorneys' Fees | $569,428.25 |
| **Amount In Controversy Subtotal** | **$6,263,710.81** |

94.     Based on the foregoing, this Court has jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d), and removal of this case is appropriate pursuant to the provisions of 28 U.S.C. § 1441(a), as there is diversity between at least one class member and Defendants; the proposed class contains at least 100 members; Defendants are not states, state officials, or other governmental entities; and the total amount in controversy for all potential class members exceeds $5,000,000.

## **INDIVIDUAL DIVERSITY JURISDICTION**

95.     The diversity of citizenship statute provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions where the

---

[8] The California Court of Appeal recently held that an employee is entitled to a one hour premium pursuant to Labor Code §226.7 for both a missed meal period and a missed rest period in a day such that an employee can recover a total of two hours of premium pay per day, if both a meal and rest period are missed that day. *See United Parcel Service, Inc. v. Superior Court*, ___Cal. App. 4th ___ (February 16, 2011).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL     29.     Case No.

1  matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

2  costs, and is between — (1) citizens of different States. . . ." *See* 28 U.S.C. § 1332(a).

### A. Diversity of Citizenship

4  96. At the time Plaintiff Rumohr commenced this action and at the

5  time of removal, Plaintiff was a citizen of the state of California. (Plaintiff alleges

6  that she is a resident of the State of California, residing in the County of San

7  Francisco) (Complaint, ¶6); *see Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986)

8  (residency can create a rebuttable presumption of domicile supporting diversity of

9  citizenship); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20

10  (10th Cir. 1994) (allegation by party state court complaint of residency "created a

11  presumption of continuing residence in [state] and put the burden of coming forward

12  with contrary evidence on the party seeking to prove otherwise"); *see also Smith v.*

13  *Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008) (place of residence

14  provides "prima facie" case of domicile). For diversity purposes, a person is a

15  "citizen" of the state in which he or she is domiciled. *See Kantor v. Wellesley*

16  *Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983); *see also LeBlanc v. Cleveland*, 248

17  F.3d 95, 100 (2d Cir. 2001) (citizenship determined at the time the lawsuit is filed);

18  *see also Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir. 1991).

19  A person's domicile is the place he or she resides with the intention to remain, or to

20  which he or she intends to return. *See Kanter v. Warner–Lambert Co.*, 265 F.3d 853,

21  857 (9th Cir. 2001).

22  97. For purposes of § 1332, a corporation is deemed to be a citizen of

23  any State by which it has been incorporated and of the State where it has its principal

24  place of business. *See* 28 U.S.C. § 1332(c)(1). As recently clarified by the United

25  States Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. ___; 130 S. Ct. 1181; 175 L.

26  Ed. 2d 1029 (2010), "[t]he phrase "principal place of business" in 28 U. S. C. S. §

27  1332(c)(1) refers to the place where the corporation's high level officers direct,

28  control, and coordinate the corporation's activities. Courts have often metaphorically

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308
DEFENDANTS' NOTICE OF REMOVAL                30.                Case No.

1  called that place the corporation's "nerve center." The "nerve center" will typically be
2  found at a corporation's headquarters."

3         98.    Defendants are not states, state officials, or other governmental
4  entities. Comerica Incorporated is the parent company of Comerica Bank, a Texas
5  Banking Association. Comerica Bank is a wholly-owned subsidiary of Comerica
6  Incorporated. Comerica Management Company is a wholly-owned subsidiary of
7  Comerica Bank. Comerica Incorporated is a publicly-traded company with shares
8  traded on the New York Stock Exchange. (Declaration of Laura Kurowski
9  ("Kurowski Decl."), ¶¶4, 5, 6 and 7).

10        99.    Defendant CI was at the time of the filing of this action, and
11  remains a citizen of the States of Delaware and Texas, in that it was and continues to
12  be a corporation incorporated under the laws of the State of Delaware with its
13  principal place of business and corporate headquarters in Texas (where CI performs its
14  executive and administrative functions). (Kurowski Decl., ¶5).

15        100.   Defendant CB was at the time of the filing of this action, and
16  remains a citizen of the State of Texas, in that it was and continues to be a corporation
17  incorporated under the laws of the State of Texas, with its principal place of business
18  and corporate headquarters in Texas (where CB performs its executive and
19  administrative functions). (Kurowski Decl., ¶6).

20        101.   Defendant CMC was at the time of the filing of this action, and
21  remains a citizen of the State of Michigan, in that it was and continues to be a
22  corporation incorporated under the laws of the State of Michigan, with its principal
23  place of business and corporate headquarters in Michigan (where CMC performs its
24  executive and administrative functions). (Kurowski Decl., ¶7).

25        102.   Defendants Does 1 through 100 are fictitious. The Complaint
26  does not set forth the identity or status of any said fictitious defendants, nor does it set
27  forth any charging allegation against any fictitious defendants. Pursuant to section
28  1441(a), the citizenship of defendants sued under fictitious names must be disregarded

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

DEFENDANTS' NOTICE OF
REMOVAL                                 31.                                Case No.

1  for the purposes of determining diversity jurisdiction and cannot destroy the diversity
2  of citizenship between the parties in this action. *Newcombe v. Adolf Coors Co.,* 157
3  F.3d 686, 690-91 (9th Cir. 1998).

4         103.   As Plaintiff's citizenship is diverse from each Defendant, the
5  diversity requirements are met.

6  **B.     Plaintiff's Individual Amount in Controversy Exceeds $75,000.**

7         104.   Although Plaintiff's Complaint alleges that the amount in
8  controversy for each class representative is less than $75,000, it is legally certain
9  based on Plaintiff's Complaint and a sworn declaration which she submitted in a
10  related case (as set forth below) that the amount in controversy is indeed greater than
11  $75,000.

12         105.   This action was filed by Plaintiff, a former Assistant Banking
13  Center Manager employed by Comerica Management Company. Rumohr alleges in
14  her Complaint that she worked as an Assistant Banking Center Manager within
15  Comerica's San Francisco Bay Area District in California from in or around February
16  2006 until in or around April 2008, and was improperly classified as exempt from
17  overtime. (Complaint, ¶¶25 – 27). As a result, she claims she was not provided with
18  proper minimum and overtime wages, and was not provided with meal and rest breaks
19  or accurate wage statements. Her lawsuit was filed as a putative class action and she
20  purports to represent all former and current Assistant Banking Center Managers
21  employed by Defendants in the state of California within its San Francisco Bay Area
22  District at any time from November 3, 2005 through final judgment.

23         106.   In the *Cordova* lawsuit pending before the Honorable Margaret M.
24  Morrow (see ¶¶12-17 above), Cordova, a former Assistant Banking Center Manager
25  employed by Comerica Management Company primarily alleges that she worked at a
26  Comerica banking center in California and was misclassified as exempt overtime
27  exempt, and was not provided with meal and rest breaks or accurate wage statements.
28  Her lawsuit was filed as a putative class action and she  purports to represent former

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308
DEFENDANTS' NOTICE OF
REMOVAL                                  32.                              Case No.

1  and current "Assistant Managers" employed by Defendants in the state of California.
2  Cordova also sought remedies under the California Labor Code Private Attorney
3  General Act ("PAGA") on behalf of all other "aggrieved" Assistant Banking Center
4  Managers.

5  107. On December 20, 2010, Cordova filed a motion for class
6  certification. In connection with the motion for class certification, Cordova submitted
7  sworn declarations from several putative class members. One of those declarations
8  was from the plaintiff in this action, Carolina Rumohr. A true and correct copy of
9  Rumohr's sworn declaration submitted to this Court on December 20, 2010 is attached
10 hereto as **Exhibit G**.

11 108. In Plaintiff's sworn declaration submitted in connection with the
12 class certification motion in the *Cordova* lawsuit, Plaintiff attested under oath and
13 under penalty of perjury to the following: (i) from approximately 2006 until
14 approximately April 2008, she was employed by Defendants as an "Assistant
15 Manager" (**Exhibit G**, Rumohr Decl., ¶2); (ii) she averaged during her employment as
16 an "Assistant Manager" fifteen to twenty hours of overtime hours per week, not
17 including time worked on Saturdays (**Exhibit G**, Rumohr Decl., ¶6); (iii) as an
18 "Assistant Manager" she was considered exempt and not paid for any overtime hours
19 worked (**Exhibit G**, Rumohr Decl., ¶7); (iv) she was "almost never" able to take a 30
20 minute meal break and almost never able to take any 10 minute rest breaks, and was
21 never paid premium pay for each meal and rest break she missed (**Exhibit G**, Rumohr
22 Decl., ¶¶9, 10).

23 109. Plaintiff's second cause of action for violations of California
24 Business & Professions Code §17200 seeks restitution of wages held for unpaid
25 overtime wages; unpaid wages for missed meal periods and rest breaks, going back to
26 November 3, 2005. Plaintiff's first cause of action further seeks statutory penalties
27 pursuant to Labor Code §1197.1 and §2698 et seq. (Complaint, ¶¶55-86 and Prayer
28 for Relief).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                            33.                            Case No.

1    110.   Although the statute of limitations for a claim under Business and
2    Professions Code §17200 is four years, in her Complaint, Plaintiff alleges that the
3    statute of limitations goes back to November 3, 2005 (and thus she can seek wages
4    and other remedies dating back to that time because she alleges that "Defendant has
5    been on notice of the underlying factual allegations in this lawsuit since November 3,
6    2009, the filing date of *Cordova v. Comerica Bank*.  Accordingly, the class that
7    Plaintiff seeks to represent, as set forth in the class definition, begins on November 3,
8    2005 (four years prior to the filing of the Cordova action)."  (Complaint, ¶21 and
9    footnote 1).

10    111.   Defendants deny the validity and merit of all of Plaintiff's claims,
11    the legal theories upon which they are purportedly based, the extended statute of
12    limitations and the claims for monetary and other relief that flow from them.
13    However, for purposes of removal only, and without conceding that Plaintiff is
14    entitled to any damages or penalties, assuming, arguendo, the truth of Plaintiff's
15    allegations, it is readily apparent that Plaintiff's claims establish an amount "in
16    controversy" in excess of the jurisdictional minimum of $75,000, as required by 28
17    U.S.C. § 1332.

18    **Unpaid Overtime Compensation Potentially Recoverable As Restitution Under**
19    **California Business & Professions Code §17200**

20    112.   Plaintiff seeks through her second cause of action for violations of
21    Business & Professions Code §17200 restitution for allegedly unpaid overtime.  This
22    claim is based upon the assertion that Plaintiff "regularly" worked in excess of eight
23    hours per workday. (Complaint, ¶ 46).  Webster's New World Dictionary, Third
24    College Edition (1988), defines "regularly" to mean "usual; customary . . . . habitual
25    in action . . . characterized by conformity to a fixed principle or procedure."  Further,
26    Plaintiff contends that she worked in excess of eight (8) hours per day, but did not
27    receive wages or overtime compensation for work that exceeded eight (8) hours per
28    day. She seeks through her second cause restitution for allegedly wrongfully withheld

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                                34.                        Case No.

1    overtime wages for all overtime she worked as an ABCM, or from September 2006
2    through the date of her termination on April 17, 2008.

3         113.   In her sworn declaration filed in the *Cordova* action on December
4    20, 2010, Plaintiff attested under oath that she estimated she worked fifteen (15) to
5    twenty (20) hours of overtime per week during her employment with Defendants
6    without receiving any wages for such time, much less the appropriate overtime rate of
7    time and half for such work. (Complaint, ¶¶55-69; see also **Exhibit G**, Rumohr Decl.,
8    ¶¶6, 7).

9         114.   Plaintiff's records of employment maintained by Defendants
10   reflect that CMC employed Plaintiff Carolina Rumohr as an Assistant Banking Center
11   Manager in California from September 22, 2006 to April 17, 2008. While working as
12   an ABCM, Ms. Rumohr was classified as exempt from overtime. (Kurowski Decl.,
13   ¶20).

14        115.   During her period of employment as an ABCM, Defendants'
15   records reflect that there were 73 workweeks during which Plaintiff worked four or
16   more days as an ABCM. (Kurowski Decl., ¶22).

17        116.   Evaluating for purposes of removal only the workweeks where
18   Plaintiff worked 4 or more days – 73 workweeks – (and excluding the workweeks she
19   worked three or less days), and applying her under oath, sworn assertion from her
20   declaration that she worked approximately fifteen (15) to twenty (20) hours of
21   overtime hours per week, not including overtime worked every other Saturday[9],
22   Plaintiff is claiming at least twenty (20) hours of overtime for each week she worked
23   four or more days. As such, the total number of overtime hours at issue is 1,460
24   overtime hours (73 workweeks x 20 overtime hours per week = 1,460 alleged unpaid

25

26   ⁹ Rumohr avers that she worked, on average, fifteen to twenty hours of overtime every
     week as an ABCM, *not including overtime worked on Saturdays every other week.*
27   (**Exhibit G,** Rumohr Decl. ¶6). Thus, given that fifteen hours would likely be too low
     according to Rumohr's own testimony, Defendants use an estimated twenty (20) hours
28   of overtime worked per workweek that Rumohr worked four or more days.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                          35.                              Case No.

1   overtime hours).

2        117.   CMC's records reflect that from September 22, 2006 through June

3   29, 2007, Ms. Rumohr earned an annual salary of $46,113.60 ($22.17 per hour).

4   From June 29, 2007 to April 17, 2008, Plaintiff earned an annual salary of $46,920 per

5   year ($22.56 per hour). (Kurowski Decl., ¶21).[10]

6        118.   Plaintiff's overtime rate is determined by multiplying her hourly

7   rate of $22.17 by one and one-half times. Thus, Plaintiff's overtime rate is $33.255.

8        119.   Applying the overtime rate ($33.255) to the number of alleged

9   unpaid overtime hours (1,460) yields the following potential amount of unpaid

10   overtime:

| Dates as ABCM | Alleged OT Hours | Overtime Rate | Potential Unpaid Overtime Recoverable as Restitution Under B&P Code §17200 |
|---|---|---|---|
| 9/22/06 – 4/17/08 | 1460 | $33.255 | $48,552.30 |

16        120.   In total, a conservative estimate of the amount in controversy for

17   Plaintiff's claim for restitution for allegedly unpaid overtime is $48,552.30. Should

18   Plaintiff allege that she worked any overtime per week during workweeks where she

19   worked 3 days or less, or if she alleges she is entitled to double-time on any particular

20   days, the amount in controversy as it relates to unpaid overtime will be even higher.

21   **Compensation For Missed Rest Breaks Potentially Recoverable As Restitution**

22   **Under California Business & Professions Code §17200**

23        121.   Plaintiff seeks through her second cause of action for violations of

24   Business & Professions Code §17200 restitution for allegedly unpaid wages for

25   missed rest breaks. (Complaint, ¶76). This is claim is based on Plaintiff's allegation

---

27   [10] As noted above, Plaintiff received a raise on or about June 29, 2007. However,

28   taking an overly conservative approach, Defendants calculate all overtime rates using Plaintiff's lowest hourly rate as an ABCM - $22.17 per hour.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL     36.     Case No.

1   that Defendants "regularly and consistently" failed to provide her with uninterrupted

2   rest breaks. (Complaint, ¶47). While Plaintiff does not define "regularly," Webster's

3   New World Dictionary, Third College Edition (1988), defines "regularly" to mean

4   "usual; customary . . . . habitual in action . . . characterized by conformity to a fixed

5   principle or procedure."

6         122.   Plaintiff further claims that she is entitled to recover in the form of

7   restitution one (1) hour of pay at her regular rate of compensation for each workday

8   that a rest period was not provided while she worked as an ABCM. (Complaint, ¶¶21,

9   70-86, and Prayer for Relief); see also Cal. Lab. Code § 226.7(b)).

10         123.   In her sworn declaration filed in the *Cordova* matter on December

11   20, 2010, Plaintiff attested under oath that during her employment with Defendants,

12   she was "almost never able to take any 10 consecutive minutes of off duty rest break

13   time . . ." and that she was never paid a one hour premium for such missed rest breaks.

14   (**Exhibit G**, Rumohr Decl., ¶¶8-9).

15         124.   During her period of employment as an ABCM, Defendants'

16   records reflect that there were 73 workweeks during which Plaintiff worked 4 or more

17   days as an ABCM. (Kurowski Decl., ¶22).

18         125.   Evaluating for purposes of removal only the workweeks where

19   Plaintiff worked 4 or more days – 73 workweeks – (and excluding the workweeks she

20   worked 3 or less days), and applying her under oath, sworn assertion from her

21   declaration that she was "almost never" able to take 10 consecutive minutes off for

22   rest breaks, it is reasonable to interpret that to mean that there were at least 4 days

23   each week where she worked at least 4 days in a week where she missed at least one

24   rest break in a day. As such, the total number of missed rest periods at issue is 292

25   (73 workweeks x 4 days per week with at least one missed rest period = 292 days with

26   an alleged missed rest period).

27         126.   Applying Plaintiff's hourly rate of $22.17 to the total number of

28   days with missed rest periods as established by Plaintiff's sworn declaration and her

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL      37.      Case No.

Complaint, yields the following potential amount of restitution owed for missed rest periods pursuant to Business & Professions Code §17200:

| Dates Worked as an ABCM | Number of Days With Alleged Missed Rest Periods (Assuming 4 days per week with at least 1 missed rest period) | Hourly Rate | Potential Wages for Missed Rest Periods Recoverable as Restitution Under B&P Code §17200 |
|---|---|---|---|
| 9/22/06 – 4/17/08 | 292 | $22.17 | $6,473.64 |

127. Thus, in total, a conservative estimate of the amount in controversy for Plaintiff's claim for restitution for allegedly unpaid wages for missed rest periods is $6,473.64. Should Plaintiff allege that she missed more than four (4) rest breaks per week during weeks she worked 4 or more days, or that she missed rest breaks in weeks where she worked 3 or fewer days, the amount in controversy will be even higher.

**Compensation For Missed Meal Breaks Potentially Recoverable As Restitution Under California Business & Professions Code §17200**

128. Plaintiff seeks through her second cause of action for violations of Business & Professions Code §17200 restitution for allegedly unpaid wages for missed meal breaks. (Complaint, ¶75). This is claim is based on Plaintiff's allegation that Defendants "regularly and consistently" failed to provide her with uninterrupted meal breaks. (Complaint, ¶47). While Plaintiff does not define "regularly," Webster's New World Dictionary, Third College Edition (1988), defines "regularly" to mean "usual; customary . . . . habitual in action . . . characterized by conformity to a fixed principle or procedure."

129. Plaintiff further claims that she is entitled to recover in the form of restitution one (1) hour of pay at her regular rate of compensation for each workday that a meal period was not provided while she worked as an ABCM. (Complaint, ¶¶21, 70-86, and Prayer for Relief); see also Cal. Lab. Code § 226.7(b)).

130. In her sworn declaration filed in the *Cordova* matter on December

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL                    38.                    Case No.

1    20, 2010, Plaintiff attested under oath that during her employment with Defendants,

2    she was "almost never able to take 30 consecutive minutes of off duty time for a meal

3    break . . ." and that she was never paid a one hour premium for such missed meal

4    breaks. (**Exhibit G**, Rumohr Decl., ¶¶8-9).

5          131.    During her period of employment as an ABCM, Defendants'

6    records reflect that there were 73 workweeks during which Plaintiff worked 4 or more

7    days as an ABCM. (Kurowski Decl., ¶22).

8          132.    Evaluating for purposes of removal only the workweeks where

9    Plaintiff worked 4 or more days – 73 workweeks – (and excluding the workweeks she

10    worked 3 or less days), and applying her under oath, sworn assertion from her

11    declaration that she was "almost never" able to take 30 consecutive minutes off for

12    meal breaks, it is reasonable to interpret that to mean that there were at least four (4)

13    days each week where she worked at least 4 days in a week where she missed at least

14    one meal break in a day. As such, the total number of missed meal periods at issue is

15    292 (73 workweeks x 4 days per week with at least one missed meal period = 292

16    days with an alleged missed meal period).

17          133.    Applying Plaintiff's hourly rate of $22.17 to the total number of

18    days with missed meal periods as established by Plaintiff's sworn declaration and her

19    Complaint, yields the following potential amount of restitution owed for missed meal

20    periods pursuant to Business & Professions Code §17200:

| Dates Worked as an ABCM | Number of Days With Alleged Missed Meal Periods (Assuming 4 days per week with at least 1 missed meal period) | Hourly Rate | Potential Wages for Missed Meal Periods Recoverable as Restitution Under B&P Code §17200 |
|---|---|---|---|
| 9/22/06 – 4/17/08 | 292 | $22.17 | $6,473.64 |

26          134.    Thus, in total, a conservative estimate of the amount in

27    controversy for Plaintiff's claim for restitution for allegedly unpaid wages for missed

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

DEFENDANTS' NOTICE OF REMOVAL      39.      Case No.

1  meal periods is $6,473.64. Should Plaintiff allege that she missed more than four (4)

2  meal breaks per week during weeks she worked 4 or more days, or that she missed

3  meal breaks in weeks where she worked 3 or fewer days, the amount in controversy

4  will be even higher.

5  ### Penalties Pursuant to Labor Code § 1197.1

6  135.  In connection with Plaintiff's first cause of action for unpaid

7  wages, Plaintiff seeks to recover penalties pursuant to Labor Code §1197.1, which

8  provides that Plaintiff is entitled to recover a penalty of one hundred dollars ($100) for

9  the initial failure to timely pay her wages and two hundred and fifty dollars ($250) for

10  each subsequent failure to pay each employee minimum wages. (Complaint (**Exhibit**

11  **A**), ¶68).

12  136.  To evaluate the amount in controversy on this claim, Defendants

13  evaluate the number of pay periods at issue. Defendant CMC employed Plaintiff

14  Ruhmor as an Assistant Banking Center Manager from September 22, 2006 through

15  April 17, 2008. (Kurowski Decl., ¶ 20). Between September 22, 2006 and April 17,

16  2008, there are approximately 81 weeks at issue. Because Plaintiff was paid every

17  two weeks, a minimum of 40 pay periods are at issue (40.5 = 81/2) . (*See* Kurowski

18  Decl., ¶ 14).  As a result, based on Plaintiff's alleged violation of Labor Code section

19  1197.1, the amount in controversy at issue is $100 for the first violation and $250 for

20  each subsequent violation or $9,850 ($9,850 = ($100 x 1) + ($250 x 39)).

21  ### Penalties Pursuant to Labor Code § 2698, *et seq.*

22  137.  In connection with her first cause of action for unpaid wages,

23  Plaintiff seeks to recover penalties pursuant to Labor Code § 2699(a), (f) and (g) for

24  violations of, among other Labor Code sections, Labor Code § 510. (Complaint

25  (**Exhibits A**), ¶9, Prayer for Relief).  Violations of Labor Code § 510 result in

26  penalties pursuant to Labor Code § 558(a), which provides that Plaintiff is entitled to

27  recover a penalty of fifty dollars ($50) for the initial pay period where overtime was

28  not paid, and one hundred dollars ($100) for each subsequent pay period where

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL

40.

Case No.

1   overtime was not paid.

2          138.   As discussed above, Defendant CMC employed Plaintiff Ruhmor
3   as an Assistant Banking Center Manager from September 22, 2006 through April 17,
4   2008. (Kurowski Decl., ¶ 20).  Between September 22, 2006 and April 17, 2008,
5   there are approximately 73 weeks where Plaintiff worked four or more days as an
6   ABCM. (Kurowski Decl., ¶ 22).  Applying Plaintiff Ruhmor's declaration submitted
7   in support of Cordova's motion for class certification attesting under the penalty of
8   perjury that she worked "15 to 20 hours of overtime per week", each pay period
9   Plaintiff worked as an ABCM is at issue. (**Exhibit G,** Rumohr Decl. ¶6).  However,
10  conservatively applying the penalty to pay periods when Plaintiff worked four or more
11  days each week, a minimum of 36 pay periods is at issue because Plaintiff was paid
12  every two weeks (36.5 = 73 workweeks where Plaintiff worked four or more days
13  divided by 2) .  (*See* Kurowski Decl., ¶ 14).      As a result, based on Plaintiff's
14  allegation that she is entitled to penalties under Labor Code section 2698,  the amount
15  in controversy at issue is $50 for the first violation and $100 for each subsequent
16  violation or $3,550 ($3,550 = ($50 x 1) + ($100 x 35)).

17                         **Attorneys' Fees**

18         139.   Plaintiff also seeks to recover attorneys' fees pursuant to
19  California Labor Code § 1194(a), among other statutory provisions.  (Complaint,
20  Prayer for Relief, ¶10).  It is well settled that, in determining whether a complaint
21  meets the amount in controversy requirement, the Court should consider the aggregate
22  value of claims for damages as well as attorneys' fees. See, e.g., *Lowdermilk v. U.S.*
23  *Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007); *Kroske v. U.S. Bank Corp.*,
24  432 F.3d 976, 980 (9th Cir. 2005), *cert. denied*, 127 S. Ct. 157 (2006); *Galt G/S v. JSS*
25  *Scandinavia*, 142 F.3d 1150, 1155-1156 (9th Cir. 1998)(attorneys' fees may be taken
26  into account to determine jurisdictional amounts).

27         140.   Assuming a conservative attorneys' fee award of only 25% of the
28  aforementioned amounts in controversy, the amount of attorneys' fees recovered by

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL                41.                        Case No.

Plaintiff should she prevail will likely exceed $18,724.89 ($74,899.58 x 25% = $18,724.89). See *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008), quoting, *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."); *Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990) (25% of total recovery is a benchmark for recovery of attorneys' fees)*; See Eicher v. Advanced Business*, 151 Cal. App. 4th 1363, 1382 (2007). In *Eicher*, the court upheld an attorneys' fees award in the amount of $40,000 pursuant to Labor Code § 1194 an overtime claim where the prevailing party was awarded $46,617.25 in back wages. *Id.*

141. The estimated fee award of at least $18,724.89 is very conservative, given the high hourly rates charged by Plaintiff's attorneys. Plaintiff's attorney Matthew Righetti has previously declared under penalty of perjury that his hourly fee is $750.00. *See*, Defendants' Request for Judicial Notice at ¶1, filed herewith, and Exhibit A thereto. One of Plaintiff's other attorneys, Gene Williams, has an hourly rate of at least $495.00. *See*, Defendants' Request for Judicial Notice at ¶2, filed herewith, and Exhibit B thereto. Mr. Righetti need only work 25 hours on this matter to exceed the estimated $18,724.89 ($750 x 25 = $18,500). Likewise, Mr. Williams would need only work 67 hours to reach the estimated fee award ($295 x 64 = $18,880). Both of these figures are gross underestimates of the time Plaintiff's counsel is likely to spend litigating this matter through trial.

### Total Amount in Controversy

142. Based on the foregoing, the total potential recovery for Plaintiff on her claim for restitution pursuant to California Business and Professions Code §17200 for unpaid overtime wages and unpaid compensation for missed meal and rest breaks, and her claims for penalties pursuant to her first cause of action, plus her claim for attorneys' fees, is no less than $ 93,624.47, as summarized below:

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL                42.                Case No.

1

2

3

4

5

6

7

8

9

10

11

12

13

| Plaintiff's Claim | Amount In Controversy |
|---|---|
| Restitution for Unpaid Overtime Wages | $48,552.30 |
| Restitution for Unpaid Compensation for Missed Rest Breaks | $6,473.64 |
| Restitution for Unpaid Compensation for Missed Meal Breaks[11] | $6,473.64 |
| Penalties Pursuant to Labor Code § 1197.1 | $9,850 |
| Penalties Pursuant to Labor Code § 2698 | $3,550 |
| Attorneys' Fees | $18,724.89 |
| **Amount In Controversy Subtotal** | **$ 93,624.47** |

14

15

16

17

18

19

20

21

22

23

143. Based on the foregoing, Plaintiff's individual claims for damages, penalties, and other monetary relief exceed the $75,000 jurisdictional limit of this Court required by the diversity statute, 28 U.S.C. § 1332(a). The unnamed putative class members' claims would be subject to the Court's supplemental jurisdiction under 28 U.S.C. § 1367, even though this Court also has jurisdiction of the class claims under CAFA as set forth above. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 938 (9th Cir. 2001). Consequently, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(a) and one that is properly removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

24

25

144. Accordingly, this Court has jurisdiction over this case pursuant to

26

27

28

---

[11] The California Court of Appeal recently held that an employee is entitled to a one hour premium pursuant to Labor Code §226.7 for both a missed meal period and a missed rest period in a day such that an employee can recover a total of two hours of premium pay per day, if both a meal and rest period are missed that day. *See United Parcel Service, Inc. v. Superior Court*, 192 Cal. App. 4th 1043 (February 16, 2011).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL

43.

Case No.

1   28 U.S.C. § 1332, and removal of this case is appropriate pursuant to the provisions of
2   28 U.S.C. § 1441(a), as there is complete diversity between Plaintiff and Defendants
3   and the total amount in controversy for Plaintiff exceeds $75,000.00.

### TIMELINESS OF REMOVAL

5   145.   This Notice of Removal is timely.   Under 28 U.S.C. § 1446(b), the
6   notice of removal of a civil action must be filed within 30 days after service of the
7   summons and complaint.   *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526
8   U.S. 344, 354 (1999) (the 30-day removal period runs from the service of the
9   summons and complaint; receipt of summons and complaint is insufficient to trigger
10  removal period).

11  146.   Plaintiff filed her Complaint with the San Francisco Superior
12  Court on February 22, 2011.   The Complaint was served on each of the Defendants on
13  March 9, 2010.   As such, because this matter is being removed within 30 days of
14  service of the Complaint, this Notice of Removal is timely as a matter of law.

### NOTICE TO PLAINTIFF AND STATE COURT

16  147.   Contemporaneously with the filing of this Notice of Removal in
17  the United States District Court for the Northern District of California, written notice
18  of such filing will be given by the undersigned to Plaintiff's Counsel of Record,
19  Matthew Righetti of Righetti Glugoski, P.C., Gene Williams of Initiative Legal Group
20  APC, and Edwin Aiwazian of The Aiwazian Law Firm, and a copy of the Notice of
21  Removal will be filed with the Clerk of the San Francisco Superior Court.

22
23
24
25
26
27
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANTS' NOTICE OF REMOVAL                    44.                    Case No.

1    Dated:   April 7, 2011

2

3

KEITH A. JACOBY
4    SCOTT M. LIDMAN
HEATHER M. DAVIS
5    LITTLER MENDELSON
A Professional Corporation
6    Attorneys for Defendants
COMERICA BANK, COMERICA
7    INCORPORATED AND COMERICA
MANAGEMENT COMPANY
8    (ERRONEOUSLY SUED AS
COMERICA MANAGEMENT
9    COMPANY, INC.)

10

11    Firmwide:100973110.9 062020.1013

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

DEFENDANTS' NOTICE OF
REMOVAL                         45.                              Case No.